IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-00015-01-CR-W-BP |
| | ) | |
| RASHIDI CROSDALE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant Rashidi Crosdale has been charged in an Indictment with being a felon in possession of seven firearms. He filed a Motion to Suppress, (Doc. 47), contending that evidence and statements should be suppressed because his initial stop by the police was not supported by reasonable suspicion. The Honorable John T. Maughmer, United States Magistrate Judge for this District, held a hearing on July 31, 2019, and he issued a Report recommending that the Motion to Suppress be denied. (Doc. 75.) Both Defendant and the Government object to Judge Maughmer's Report and Recommendation ("the Report").

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1), and has reviewed the parties' submissions before the hearing, the transcript from the hearing, the exhibits admitted during the hearing, and the parties' objections. The Court now adopts the Report as the Order of the Court and denies the Motion to Suppress; the Court's discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

**I. BACKGROUND**

On or about January 4, 2018, two individuals made a report with the Kansas City (Missouri) Police Department, ("KCPD"), reporting that three armed, black males had robbed

their house in December 2017 and took over the residence. On January 5, 2018, Sergeant Andrew Dorothy read that report. He drove past the house in question and observed a black Malibu parked outside. The plates were registered to Izetta Brunson. Further investigation revealed that Brunson was involved in a narcotics investigation with her boyfriend, Kevin Conner, and that there was an outstanding warrant from Jackson County for Conner's arrest.[1]

At the time Sergeant Dorothy supervised a squad of six officers. On January 9, 2018, Sergeant Dorothy briefed the other members of his squad, and a plan was developed to watch for Conner, arrest him, and have the complaining individuals observe Conner in a lineup. During the briefing the members of the squad were shown pictures of Conner obtained from Conner's driver's license records at the Department of Revenue and provided basic identifying information (such as height, weight and race). Two members of the squad, acting undercover, watched the residence from unmarked cars; during the surveillance one of them (Sergeant Justin Palmer) observed a person generally matching Conner's description leave the house accompanied by a female juvenile, get in the Malibu, and drive away. Sergeant Palmer was unable to confirm that the driver was Conner; his original observation was from half a block away, and the Malibu had tinted windows and the driver was reclined in his seat.

Sergeant Palmer followed the Malibu and radioed his observations to the other squad members, including Officers Bobbie King and James Oakes, who were in a marked police car. The Malibu entered the drive-through at a McDonalds, and Sergeant Palmer parked in the parking lot. When Officers King and Oakes arrived, there were cars in front of and behind the Malibu; the officers activated the patrol car's lights and brought their patrol car next to the Malibu to block it in the drive-through lane. Officer Oakes exited the car to approach the

---

[1] The Record reveals some confusion or contradiction as to how Conner's name is spelled. As will be explained, it seems clear that the correct spelling is "Conner."

2

Malibu, but the Malibu drove through the blockade. In doing so it hit the car in front of it, hit a guard rail adjacent to the drive-through lane (knocking it into another car), went across multiple lanes of traffic to cross the street, and ended up at a grocery store parking lot across the street. The driver then ran from the car and was eventually apprehended in a parking lot for a nearby business. It was at this time the officers learned that they had arrested Defendant and not Conner. Defendant was arrested for fleeing the scene of an accident and fleeing from the police; a computer check also revealed that there were outstanding warrants for Defendant's arrest.

Meanwhile, Sergeant Dorothy arrived where the Malibu had come to a stop in the grocery store's parking lot. He saw the female juvenile outside the car, crying, and the Malibu's door was open. He looked inside to see if there was anyone else in the car and saw a Glock semiautomatic handgun between the driver's seat and the center console. The Malibu was eventually towed, and an inventory search revealed a rifle with a hundred-round clip magazine.

Detective Gwen Marino interviewed Brunson and learned that she lived in the house with Defendant since Christmas 2017. Detective Marino also interviewed one of the complaining individuals. She obtained consent to search the house from both of them. The results of that search revealed additional firearms that are described in the Indictment. Also, at some point Defendant was interviewed and made incriminating statements.

Judge Maughmer took judicial notice of a criminal case filed in this District: *United States v. Kevin Conner,* No. 16-00174-01-CR-RK. While nobody – including counsel for the Government – could confirm whether the defendant in that case was the same Kevin Conner who was known to associate with Brunson (and who Sergeant Dorothy's squad intended to arrest on an outstanding warrant) (*see* Doc. 73, pp. 38-39) – the material filed in that case establishes that it was the same person. And, the Court's records reflect that Conner was indicted by the federal

grand jury in May 2016, was arrested on the federal warrant in January 2017, remained in custody until he pleaded guilty in May 2017, and has remained in custody since.

# I. DISCUSSION

Defendant argues that the police stopped him at the McDonalds but did not have reasonable suspicion to do so; therefore, the guns and his statement must be suppressed. The Government argues that Defendant was not stopped but even if he was the stop was supported by reasonable suspicion. The Report recommends that the Court conclude that Defendant was stopped but that the police had reasonable suspicion to stop him. The Court resolves these matters below.[2]

First, the evidence, including particularly the testimony and Government's Exhibit 10, demonstrate that Defendant was not free to leave the McDonald's drive-through. The Court acknowledges the Government's argument that he was not stopped, and the Court will address that argument shortly. However, the Court concludes that the officers had reasonable suspicion to conduct a stop. Reasonable suspicion is a less demanding standard than probable cause; it requires more than an "inchoate and unparticularized suspicion or hunch," *United States v. Carpenter,* 462 F.3d 981, 986 (8th Cir. 2006) (quoting *United States v. Sokolow,* 490 U.S. 1, 7 (1989)), but the degree of suspicion required is minimal. *E.g., United States v. Donnelly,* 475 F.3d 946, 952 (8th Cir. 2007). In making that assessment, an officer can draw on his or her experiences and training to draw inferences, the facts must be considered cumulatively, and "[i]nnocent actions can give rise to reasonable suspicion when considered as part of the totality of the circumstances." *United States v. Davison,* 808 F.3d 325, 329 (8th Cir. 2015). Here, the officers knew that (1) the Malibu was parked at the house long enough to suggest that its owner

---

[2] The parties have not addressed the possible applicability of *Utah v. Strieff,* 136 S. Ct. 2056 (2016) (evidence found during the course of an unlawful stop not suppressed "because the unlawful stop was sufficiently attenuated by the pre-existing arrest warrant.") Therefore, the Court will not consider the issue.

was associated with the house, (2) the Malibu was registered to Brunson, (3) Brunson was associated with Conner, (4) there were warrants for Conner's arrest, and (5) the person exiting the house and driving the Malibu appeared to match Conner's description. These facts gave the officers a reasonable suspicion that the person they were observing was Conner, and they were justified in stopping him to confirm or dispel that suspicion.

Defendant argues that none of the officers had positively identified the driver as Conner, (Doc. 80, p. 5), which is true – but this does not affect whether the officers had a reasonable suspicion that the driver was Conner. And, given that they had reasonable suspicion, the officers were justified in taking steps to confirm or dispel that suspicion. Defendant also argues that he was arrested and not merely stopped. (Doc. 80, pp. 5-6.) It is true that the officers intended to arrest Defendant – but only if he was Conner. And, the officers would have been justified in arresting Conner because there was an outstanding warrant for his arrest. Until then, they were justified in stopping Defendant to ascertain if he was Conner. Defendant also contends that he was arrested and not stopped because the officers approached with their guns drawn. However, while the driver was not being stopped or arrested because of his suspected involvement in the armed home invasion/robbery, he was still a suspect in that crime – so approaching with guns drawn as a precaution did not exceed the permissible bounds of the stop. *See, e.g., United States v. Sanford,* 813 F.3d 708, 712-13 (8th Cir. 2016); *United States v. Fisher,* 364 F.3d 970, 973-74 (8th Cir. 2004). Finally, Defendant suggests that the officers could have done more to determine that he was not Conner, and that they should have know that Conner was in federal custody. The Court disagrees and finds that the officers acted reasonably. In this regard, the Court notes that there is no evidence demonstrating that the records Sergeant Dorothy reviewed related the fact of Defendant's arrest and detention in federal custody.

The Government also objects to the Report, arguing that Defendant was not seized in the McDonalds drive-through. The Government does not argue that under the circumstances – blocked in by cars (including a police car with its lights on) with officers approaching – Defendant was free to leave. Instead, the Government's argument is that the officers did not stop Defendant because he fled; they only *attempted* to seize him in the drive-through, so there is no need to establish reasonable suspicion. The issue is not discussed in sufficient detail to allow for a determination. In particular, it is not clear from the case law that there is no stop when law enforcement officers surround a person to block a person's means of travel to the point that they cannot feasibly leave; such actions may be tantamount to the exertion of physical force, which is sufficient to constitute a stop even if the person runs away. Regardless, the Court discerns no need for additional briefing on the issue. If the Government is correct, then the motion to suppress should be denied because there was no "initial stop;" there was just the arrest after Defendant left the Malibu, supported by probable cause to believe that Defendant fled the scene of an accident. If the Government is incorrect, the Motion to Suppress should be denied because the stop was supported by reasonable suspicion. Either way, the Motion to Suppress should be denied.

### III.  CONCLUSION

For these reasons, the Court **OVERRULES** Defendant's objections, (Doc. 80), **OVERRULES** the Government's objections, (Doc. 82), **ADOPTS** Judge Maughmer's Report and Recommendation, (Doc. 75), and **DENIES** the Motion to Suppress, (Doc. 47.)

**IT IS SO ORDERED.**

DATE: November _12_, 2019

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT